AO (Rev. 1/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT
☒ SUPERSEDING

**— OFFENSE CHARGED —**

18 U.S.C. § 1956(h) -- Conspiracy to Commit Money Landering;
18 U.S.C. § 1956(a)(2) -- Money Laundering;
18 U.S.C. § 1056(a)(1)(B) -- Money Laundering;
18 U.S.C. § 2314 - Transportation of Stolen Property

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:

See attached sheet for penalties

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA
San Francisco Venue

DEFENDANT - U.S.

▶ PAVEL IVANOVICH LAZARENKO

DISTRICT COURT NUMBER

CR 00-0284-MJJ

**— DEFENDANT —**

**IS *NOT* IN CUSTODY**

1) ☐ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☒ On this charge

5) ☐ On another conviction
6) ☐ Awaiting trial on other  } ☐ Fed'l  ☐ State

If answer to (6) is "Yes", show name of institution

Has detainer been filed?  ☐ Yes  } If "Yes" give date filed
☐ No

**DATE OF ARREST**  ▶  Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY**  ▶  Month/Day/Year

☐ This report amends AO 257 previously submitted

---

**PROCEEDING**
Name of Complaintant Agency, or Person (&Title, if any)

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on
  ☐ U.S. Att'y ☐ Defense

☒ this prosecution relates to a pending case involving this same defendant

prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under ▶

SHOW DOCKET NO.
CR99-122MJJ

MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on THIS FORM  ROBERT S. MUELLER, III
☒ U.S. Att'y  ☐ Other U.S. Agency

Name of Asst. U.S. Att'y (if assigned)  Martha A. Boersch

---

## — ADDITIONAL INFORMATION OR COMMENTS —

PROCESS:
☐ SUMMONS  ☒ NO PROCESS*  ☐ WARRANT  Bail Amount:

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:

Before Judge:

Comments:



## **PENALTY SHEET**

### COUNTS ONE THROUGH EIGHT

Up to 20 years imprisonment
$500,000 fine or twice the value of the funds involved
3-year term of supervised release
$100 special assessment
Restitution

### COUNTS NINE THROUGH THIRTY-ONE

Up to 10 years imprisonment
$250,000 fine
3-year term of supervised release
$100 special assessment
Restitution

### FORFEITURE

See Forfeiture Allegation

# ATTACHMENT 1

## DESCRIPTION

All that certain real property situate in the City of Novato, County of Marin, State of California, described as follows:

### PARCEL ONE:

PARCEL 440, as shown upon that certain parcel map entitled, "Parcel Map of Subdivision of Lots 435, 436, 437 & 438, Marin Golf and Country Club Estates Unit No. 7", filed for record October 5, 1978 in Book 15 of Parcel Maps, at Page 72, Marin County Records.

EXCEPTING THEREFROM the following described parcel:

THAT portion of the lands of Charles R. and Sun P. Stephens as to a 96% interest and Michael Brian Stephens as to a 4% interest as described by Deed recorded under Document Number 93-112189 being a portion of Lot 440 as shown on that certain Parcel Map recorded in Book 15 of Parcel Maps, at Page 72, Marin County Records, being more particularly described as follows:

BEGINNING at the Southeasterly corner of said Lot 440 witnessed by a found 3/4" Iron Pipe tagged R.C.E. 11629; thence South 75° 40' 46" West 454.36 feet (South 75° 44' 00" West 454.49 feet) to the Southwesterly corner of Lot 440, witnessed by a found 3/4 Iron Pipe tagged R.C.E. 11629; thence along the Westerly line of Lot 440 North 22° 27' 32" West (North 22° 24' 05" West) 60.00 feet to a set 3/4" Iron Pipe; thence parallel with the Southerly line of Lot 440 North 75° 40' 46" East 437.69 feet to a set 3/4" Iron Pipe on the Easterly line of Lot 440; thence South 37° 16' 42" East 64.51 feet (South 37° 11' 00" East 64.53 feet) to the Southeasterly corner of Lot 440 and being the point of beginning.

BEARINGS are based on found street monuments of said 15 Parcel Map 72, having a radius of 105.00 feet, a central angle of 190° 57' 00", an arc length of 349.93 feet, bearing North 88° 50' 30" East 209.04 feet. All set 3/4" Iron Pipes are tagged L.S. 5970.

### PARCEL TWO:

LOT 434, as shown upon that certain map entitled, "Map of Marin Golf and Country Club Estates Unit No. 7, City of Novato, County of Marin, State of California", filed for record April 13, 1977 in Volume 16 of Maps, at Page 92, Marin County Records.

EXCEPTING THEREFROM the following described parcel:

THAT portion of the lands of Charles R. and Sun P. Stephens as to a 96% interest and Michael Brian Stephens as to a 4% interest as described by Deed recorded under Document Number 93-112189 being a portion of Lot 434 as shown on that certain Record Map recorded in Book 16 of Maps, at Page 92, Marin County Records, being more particularly described as follows:

continues on the following page.......

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT
☒ SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA
San Francisco Venue

---

**OFFENSE CHARGED**

18 U.S.C. § 1956(h)--Conspiracy to Commit Money Laundering;
18 U.S.C. § 1956(a)(2)--Money Laundering;
18 U.S.C. § 1343--Wire Fraud;
18 U.S.C. § 2314-Transportation of Stolen Property;
18 U.S.C. Section 2--Aiding and Abetting

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY:

See attached sheet for penalties

**DEFENDANT**

▶ PAVEL IVANOVICH LAZARENKO

**DISTRICT COURT NUMBER**

CR 00-0284-MJJ

---

**PROCEEDING**

**Name of Complaintant Agency, or Person (&Title, if any)**

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on
☐ U.S. Att'y ☐ Defense

☒ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

SHOW DOCKET NO.
CR99-122MJJ

MAGISTRATE CASE NO.

**Name and Office of Person Furnishing Information on THIS FORM**
ROBERT S. MUELLER, III
☒ U.S. Att'y ☐ Other U.S. Agency

**Name of Asst. U.S. Att'y (if assigned)**
Martha A. Boersch

---

**DEFENDANT**

**IS NOT IN CUSTODY**

1) ☐ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☒ On this charge

5) ☐ On another conviction
6) ☐ Awaiting trial on other    } ☐ Fed'l ☐ State

If answer to (6) is "Yes", show name of institution

Has detainer been filed?  ☐ Yes    If "Yes" give date filed
☐ No

**DATE OF ARREST** ▶              Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** ▶    Month/Day/Year

☐ This report amends AO 257 previously submitted

---

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS  ☒ NO PROCESS*  ☐ WARRANT    Bail Amount:

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:

Before Judge:

Comments:

## **PENALTY SHEET**

### COUNTS ONE THROUGH EIGHT (18 U.S.C. § 1956)

Up to 20 years imprisonment
$500,000 fine or twice the value of the funds involved
3-year term of supervised release
$100 special assessment
Restitution

### COUNTS NINE THROUGH THIRTY (18 U.S.C. § 1343)

Up to 5 years imprisonment
$250,000 fine
3-year term of supervised release
$100 special assessment
Restitution

### COUNTS THIRTY-ONE THROUGH FIFTY-THREE (18 U.S.C. § 2314)

Up to 10 years imprisonment
$250,000 fine
3-year term of supervised release
$100 special assessment
Restitution

### FORFEITURE

See Forfeiture Allegation

# United States District Court

FOR THE
## NORTHERN DISTRICT OF CALIFORNIA
## CRIMINAL DIVISION

VENUE: SAN FRANCISCO

*FILED*
*DEC -1 AN 9: 42 M*

UNITED STATES OF AMERICA,

**V.**

PAVEL IVANOVICH LAZARENKO

DEFENDANT.

# INDICTMENT

18 U.S.C. § 1956(h) -- Conspiracy to Commit Money Laundering; 18 U.S.C. § 1956(a)(2) -- Money Laundering; 18 U.S.C. § 1056(a)(1)(B) -- Money Laundering; 18 U.S.C. § 2314 -- Transportation of Stolen Property

A true bill.

_____
Foreman

Filed in open court this _____ day of
_____ .

_____
Clerk

Bail, $ No process

1  ROBERT S. MUELLER, III (CSBN 59775)
   United States Attorney

2



3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11

12  | UNITED STATES OF AMERICA, | No. CR 00-0284-MJJ |

13          Plaintiff,                  VIOLATIONS: Title 18, United States
                                        Code, Section 1956(h) – Conspiracy to
14     v.                               Commit Money Laundering; Title 18,
                                        United States Code, Section 1956(a)(2) –
15  PAVEL IVANOVICH LAZARENKO,          Money Laundering; Title18, United States
       a/k/a "Pavlo Ivanovych Lazarenko,"   Code, Section 1956(a)(1)(B) – Money
16                                      Laundering; Title 18, United States Code,
          Defendant.                    Section 2314 – Transportation of Stolen
17                                      Property; Title 18, United States Code,
                                        Section 2 – Aiding and Abetting
18
                                        SAN FRANCISCO VENUE
19

20               **SUPERSEDING INDICTMENT**

21                      **I. INTRODUCTION**

22      1.    At all times relevant to this Indictment, Pavel Ivanovich Lazarenko, a/k/a/ "Pavlo

23  Ivanovych Lazarenko" (hereinafter "Lazarenko"), was a citizen and resident of Ukraine.

24      2.    At all times relevant to this Indictment, Peter Nikolayevich Kiritchenko (hereinafter

25  "Kiritchenko") was a citizen of Ukraine and a resident of Poland and the United States.

26      3.    From March of 1992 through June of 1994, Lazarenko was a representative of the

27  President of Ukraine in the Dnepropetrovsk District of Ukraine.

28      4.    From June of 1994 through July of 1995, Lazarenko was the Chairman of the

1  Dnepropetrovsk District Council of People's Deputies.

2      5.    From July of 1995 through September of 1995, Lazarenko was the Head of the
3  Dnepropetrovsk District government.

4      6.    From September of 1995 through May of 1996, Lazarenko was the First Deputy
5  Vice Prime Minister of Ukraine.

6      7.    On May 28, 1996, Lazarenko became the Prime Minister of Ukraine, a position he
7  held until July 1, 1997.

8      8.    After July 1, 1997, Lazarenko became a member of the Ukrainian Parliament and the
9  head of the Hromada Party.

10      9.    On September 14, 1995, Kiritchenko was named an advisor to Lazarenko, who at
11  the time was First Deputy Prime Minister, by Directive No. 586 of the Ukrainian Cabinet of
12  Ministers.

13      10.   On July 12, 1996, Kiritchenko was named as an advisor to then-Prime Minister
14  Lazarenko by Ukrainian Cabinet of Ministers Directive 596. He served as an advisor until he
15  and Lazarenko were dismissed by Ukrainian Cabinet of Ministers Directive 677 on July 3, 1997.

16

17  **COUNT ONE:  (18 U.S.C. § 1956(h) -- Conspiracy to Commit Money Laundering)**

18      11. The allegations set forth in Paragraphs One through Ten of this Superseding
19  Indictment are hereby incorporated by reference.

20      12. On or about and between January 1992 and June 1999, both dates being approximate
21  and inclusive, in the Northern District of California, and elsewhere, the defendant

22                          PAVEL IVANOVICH LAZARENKO,
                            a/k/a "Pavlo Ivanovych Lazarenko,"
23
    together with Peter Nickolayevich Kiritchenko and others, did knowingly and intentionally
24
    conspire to conduct and attempt to conduct financial transactions affecting interstate and foreign
25
    commerce, which transactions involved the proceeds of specified unlawful activity, to wit:
26
    receipt and transfer of property that was stolen, unlawfully converted, and taken by fraud in
27
    violation of 18 U.S.C. § 2314 and 2315; extortion as specified in 18 U.S.C. § 1956(c)(7)(B)(ii);
28
    and wire fraud in violation of 18 U.S.C. § 1343, knowing that the transactions were designed in

SUPERSEDING INDICTMENT           2

1  whole or in part to conceal and disguise the nature, location, source, ownership, and control of

2  the proceeds of the specified unlawful activity, and that while conducting and attempting to

3  conduct such financial transactions knew that the property involved in the financial transactions

4  represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C.

5  §1956(a)(1).

## II. THE MANNER AND MEANS OF THE CONSPIRACY

### A. The Extortion and Frauds

#### 1. The Extortion

9       13.   It was part of the conspiracy that Lazarenko, while a government official in

10  Ukraine, obtained property, including money, from individuals and entities with their consent,

11  induced by wrongful use of actual or threatened fear of economic harm, and under color of

12  official right.

13             a.      For instance, beginning sometime in 1992, Lazarenko, while a government

14  official in Ukraine, met with Kiritchenko, who was doing business in Ukraine, and induced

15  Kiritchenko to transfer to a relative of Lazarenko's a 50% interest in Kiritchenko's business in

16  Ukraine and to pay Lazarenko 50% of the profits of the business.

17             b.      Thereafter, Kiritchenko transferred over $20,000,000 to accounts controlled

18  by Lazarenko as Lazarenko's 50% "share" of the profits of Kiritchenko's businesses in Ukraine.

#### 2. The Frauds

##### a. Lazarenko Defrauded Ukraine

21       14.   It was further part of the conspiracy that Lazarenko, while a government official in

22  Ukraine, defrauded the people and government of Ukraine of their right to his honest services

23  and of money and property in the following manner:

24             a.      Lazarenko, while a government official in Ukraine, received property,

25  including money, from individuals and entities doing business with Ukrainian state enterprises,

26  including, but not limited to, GHP Corporation, Agrosnabsbyt, Naukovy State Farm, Somolli

27  Enterprises, and United Energy Systems of Ukraine ("UESU"), and he did not disclose to the

28  people or the government of Ukraine that he had obtained property, including money, from

SUPERSEDING INDICTMENT                    3

1    individuals and companies doing business with Ukrainian state enterprises.

2        b.    Lazarenko, while a government official in Ukraine, exercised his official
3    authority to influence the grant of certain government benefits and privileges to various
4    individuals and entities, including, but not limited to, GHP Corporation, Agrosnabsbyt, Naukovy
5    State Farm, Somolli Enterprises, and United Energy Systems of Ukraine ("UESU"), from which
6    individuals and entities he was receiving property, including money, and did not disclose to the
7    people or the government of Ukraine that he was receiving property, including money, from
8    individuals and entities in favor of whom he had exercised his official authority;

9        **b.  Lazarenko Received Money From Fraudulent Schemes**

10       15.   It was part of the conspiracy that Lazarenko, while a government official in
11   Ukraine, received money that was the proceeds of fraud from individuals and entities doing
12   business in Ukraine:

13                                        **1)  The Naukovy Fraud**

14       a.    Lazarenko, while a government official in Ukraine, received money derived
15   from fraud from Mykhola Agafonov, who was the chief administrator of Naukovy State Farm, a
16   government enterprise, as follows:

17             1)    Lazarenko, while a government official in Ukraine, exercised his
18   official authority to ensure that Naukovy State Farm received various benefits and privileges
19   from the government of Ukraine, including the right to export metal products and raw materials
20   produced by Ukrainian state enterprises.

21             2)    Agafonov then exercised the right to export metal products and raw
22   materials by entering into a series of agreements with Van der Ploeg Von Terpstra, B.V., in
23   Leeuwarden, The Netherlands, for the purchase of cattle and other related supplies by Naukovy
24   State Farm, pursuant to which the cattle and other related supplies were to be paid for in part
25   with Ukrainian government funds and in part from the proceeds of the sale of metal products and
26   raw materials exported from Ukraine.

27             3)    After the metal products and raw materials were exported from
28   Ukraine and sold, the proceeds from the sale of metal products and raw materials exceeded the

SUPERSEDING INDICTMENT                4

1    actual purchase price of the cattle and other related supplies.

2    4) Agafonov caused the preparation of false contracts in which the value
3    of the cattle was fraudulently inflated to account for most of the excess funds received by him
4    from the sale of metal products and raw materials.

5    5)   Agafonov caused these false contracts to be presented to Naukovy
6    State Farm, thereby falsely representing that the entire proceeds from the sale of metal products
7    and raw materials had been used to purchase the cattle and other related supplies, whereas in fact
8    the excess money received from the sale of metal products and raw materials was fraudulently
9    converted by Agafonov and was not returned to Naukovy State Farm or to Ukraine.

10    6)   Agafonov caused the deposit of approximately $34,000,000 received
11    from the sale of metal products and raw materials into an account at ABN-AMRO Bank,
12    disbursements from which account he controlled.

13    7)   Of the approximately $34,000,000 that were deposited into the ABN-
14    AMRO account from the sale of metal products and raw materials, Agafonov transferred
15    approximately $20,000,000 into personal accounts belonging to himself, his associates, and
16    Lazarenko, including a transfer of $1,205,000 to Account No. 502.607.03L in the name of LIP
17    Handel A.G., in Fribourg, Switzerland; a transfer of $2,972,000 and $4,000,000 to Account No.
18    08-05785-3 in the name of KATO-82 at Credit Lyonnais Bank in Zurich, Switzerland; and a
19    transfer of $6,014,000 to Account No. 21383 at Banque Populaire Suisse in the name of
20    ORPHIN, S.A., which was subsequently transferred to Account No. 21768 in the name of
21    NIHPRO at Banque Populaire Suisse controlled by Lazarenko.

22    **2) The UESU Frauds**

23    b.   Lazarenko received money that was the proceeds of schemes to defraud
24    committed by the owners and principals of United Energy International, Ltd. ("UEIL"), United
25    Energy Systems of Ukraine ("UESU") and Somolli Enterprises, Inc., which were related
26    companies doing business in Ukraine and with Ukrainian state enterprises, as follows:

27    1)   Lazarenko, in his official capacity,  promoted the operations of
28    UESU and its related companies by, among other things, ensuring that UESU had a near

SUPERSEDING INDICTMENT              5

1 ‎ monopoly right to distribute natural gas to certain commercial enterprises in the Dniepropetrovsk

2 ‎ region of Ukraine and by causing the Ukrainian government to pledge to use state funds to repay

3 ‎ the debts of UESU payable to RAO Gazprom, the supplier of Russian natural gas to Ukraine.

4 ‎ 2) UESU fraudulently diverted to foreign bank accounts belonging to

5 ‎ UEIL the payments from Ukrainian customers for the natural gas delivered by UESU, and

6 ‎ thereafter failed to pay RAO Gazprom for the natural gas.

7 ‎ 3) Between 1996 and 1997, UEIL transferred approximately

8 ‎ $50,000,000 to Somolli Enterprises, a Cypriot company controlled by the same individuals who

9 ‎ controlled UESU.

10 ‎ 4) In 1996 Somolli Enterprises transferred the following sums: a)

11 ‎ approximately $50,000,000 into Account No. 024/10/61310/00 at AmerBank in Poland in the

12 ‎ name of ORPHIN S.A.; b) approximately $14,000,000 into Account No. 5451 in the name of

13 ‎ WILNORTH; c) approximately $23,000,000 into Account No. 21383 at Banque Populaire

14 ‎ Suisse in the name of ORPHIN, S.A.; and d) approximately $14,000,000 to European Federal

15 ‎ Credit Bank correspondent Account No. 1150-645039 at Pacific Bank in San Francisco for credit

16 ‎ to Account No. 151897 in the name of ORPHIN, S.A.; all of which were accounts controlled by

17 ‎ Peter Kiritchenko. Thereafter the money was transferred into accounts controlled by Lazarenko,

18 ‎ including Account No. Account No. 08-05785-3 in the name of KATO-82 at Credit Lyonnais in

19 ‎ Zurich, Switzerland; Account No. 5353 in the name of CARPO-53 at Bank SCS Alliance in

20 ‎ Geneva, Switzerland; as well as into accounts at European Federal Credit Bank and other

21 ‎ accounts.

22 ‎ **3) The PMH/GHP Fraud**

23 ‎ ‎ c. Lazarenko received money derived from fraud from GHP Corporation;

24 ‎ 1) Lazarenko, while a government official in Ukraine, exercised his

25 ‎ official authority in favor of GHP Corporation by ensuring that the Ukrainian Cabinet of

26 ‎ Ministers entered a contract with GHP Corporation for the purchase of six prefabricated homes.

27 ‎ 2) GHP Corporation entered into a contract with the Ukrainian Cabinet of

28 ‎ Ministers in which GHP Corporation agreed to sell six prefabricated homes for a total price of

SUPERSEDING INDICTMENT 6

1    $1,416,000.

2              3)  GHP Corporation entered into a second contract with Pacific Modern

3   Homes ("PMH") in which GHP Corporation agreed to purchase six prefabricated homes for a

4   total price of $524,763, to be shipped to the Ukrainian Cabinet of Ministers by PMH.

5              4)  When the homes were delivered to Ukraine, representatives of GHP

6   Corporation presented false invoices to the Kiev Regional Customshouse to make it appear as

7   though GHP Corporation was the shipper of the homes and had paid $1,416,000, as provided in

8   the contract between GHP Corporation and the Ukrainian Cabinet of Ministers, when in fact

9   PMH had shipped the homes and the homes actually cost only $524,763.

10             5) One half of the difference of $889,749 between the price paid for the

11  homes by GHP Corporation and the price paid for the homes by the Ukrainian Cabinet of

12  Ministers was transferred to accounts controlled by Lazarenko.

13                    **B.  The Means of Disguising and Concealing Payments of Money**

14      16.    It was a part of the conspiracy that Lazarenko, while a government official in

15  Ukraine and continuing until 1999, devised a means of disguising and concealing the payment to

16  himself of money from individuals and companies doing business with Ukrainian state

17  enterprises including, but not limited to, the foregoing payments, by creating and causing the

18  creation of various shell corporations and bank accounts into which he would deposit or direct

19  the deposit of money from individuals and businesses in Ukraine and from which he would

20  transfer or direct the transfer of money to himself or to entities he controlled.

21                           **1.  The Swiss Bank Accounts**

22             a.   In March 1993, Lazarenko opened Account No. 502.607.60L at Union Bank

23  of Switzerland in Fribourg, Switzerland in the name of LIP Handel A.G.

24             b.   Beginning sometime in 1994, Kiritchenko, upon Lazarenko's instructions,

25  managed bank accounts Lazarenko established in Switzerland to receive and transfer the money

26  Lazarenko received from Kiritchenko, GHP Corporation, Agafonov, UESU, and Somolli, as

27  described above, as well as other individuals and entities doing business in Ukraine.

28             c.   Kiritchenko, upon Lazarenko's instructions, opened bank accounts in Poland,

SUPERSEDING INDICTMENT              7

1   Switzerland, and other countries into which Kiritchenko and other individuals and companies

2   deposited money that was corruptly and fraudulently paid for the benefit of Lazarenko. These

3   accounts were used in part to conceal and disguise the nature, origin, location, source, ownership

4   and control of the money that was paid for the benefit of Lazarenko and included: accounts in

5   the name of GHP Corporation at Banque SCS Alliance (Account No. 5452) and at Banque

6   Populaire Suisse (Account No. 823896-2); accounts in the name of ORPHIN, SA at American

7   Bank in Poland (Account No. 61310) and at Banque Populaire Suisse (Account No. 21383); an

8   account in the name of Bainfield Company, Ltd. at Banque SCS Alliance (Account No. 5383); an

9   account in the name of WILNORTH, Inc. at Banque SCS Alliance (Account No. 5451); and an

10  account in the name of PADDOX INDUSTRIES at Credit Suisse (Account No. 0251-875709-7).

11          d.      Lazarenko caused money to be deposited into Kiritchenko's accounts, and

12  further directed Kiritchenko to transfer such money into accounts controlled by Lazarenko in

13  Switzerland. These accounts were used in part to conceal and disguise the nature, origin,

14  location, source, ownership and control of the money that was paid for the benefit of Lazarenko,

15  including, but not limited to, the funds described above, and these accounts included: an account

16  in the name of KATO-82 at Credit Lyonnais (Suisse) (Account No. 08-05785-3); an account in

17  the name of CARPO-53 at Banque SCS Alliance (Account No. 5353); an account in the name of

18  NIHPRO at Banque Populaire Suisse (Account No. 21768), and later at Credit Suisse (Account

19  No. 988882-52); an account in the name of Lady Lake at Bank SCS Alliance (Bahamas)

20  (Account No. 20171); and an account in the name of Fairmont Group, Ltd. at Bank SCS Alliance

21  (Bahamas) (Account No. 20170).

22                          **2. European Federal Credit Bank in Antigua**

23          e.      Between May and August of 1997, Kiritchenko and Lazarenko began

24  negotiations to purchase and purchased a majority share of European Federal Credit Bank in St.

25  John's, Antigua in order to facilitate the transfers of money and to further conceal and disguise

26  the nature, origin, location, source, ownership and control of the money that was paid for the

27  benefit of Lazarenko.

28          f.      Between May and September 1997, Lazarenko transferred or caused the

SUPERSEDING INDICTMENT              8

1   transfer of approximately $70,000,000 that Lazarenko had received into accounts he and
2   Kiritchenko controlled at European Federal Credit Bank. These accounts were used in part to
3   conceal and disguise the nature, origin, location, source, ownership and control of the money that
4   was corruptly and fraudulently paid to and for the benefit of Lazarenko including, but not limited
5   to, the funds described above, and these accounts included: an account controlled by Kiritcheno
6   in the name of ORPHIN (Account No.151897); an account controlled by Lazarenko in the name
7   of Lady Lake (Account No. 132907); an account controlled by Lazarenko in the name of
8   Fairmont (Account No. 134936); an account controlled by Lazarenko in the name of Guardian
9   Investments Group, Ltd. (Account No. 119648); an account controlled by Lazarenko in the name
10  of Firstar (Account No. 133923); and a personal account of Lazarenko's (Account No. 137978).

11  ### 3. Transfers Into The United States

12      17.   Between 1994 and 1999, Kiritchenko and Lazarenko transferred approximately
13  $114,000,000 that Lazarenko had received into bank and brokerage accounts in the United States
14  for the purpose of concealing and disguising the nature, origin, location, source, ownership and
15  control of the money that was paid for the benefit of Lazarenko including, but not limited to, the
16  funds described above, and included accounts at Commercial Bank of San Francisco; Pacific
17  Bank; Merrill, Lynch, Fenner & Smith; WestAmerica Bank; Bank of America; Fleet Boston
18  Robertson & Stephens; and Hambrecht & Quist.

19      All in violation of Title 18, United States Code, Section 1956(h).

20

21  ## COUNTS TWO THROUGH FIVE: (18 U.S.C. § 1956(a)(2) -- Money Laundering)

22      18.   The allegations in Paragraphs One through Ten and Thirteen through Seventeen of
23  this Superseding Indictment are hereby incorporated by reference.

24      19.   On or about the specific dates set forth below, in the Northern District of California
25  and elsewhere, the defendant

26                          PAVEL IVANOVICH LAZARENKO,
                             a/k/a "Pavlo Ivanovych Lazarenko,"
27
28  did transport, transmit, and transfer, and attempt to transport, transmit and transfer, funds from a
    place in the United States to or through a place outside the United States, and to a place in the

SUPERSEDING INDICTMENT          9

1  United States from or through a place outside the United States, that is, the wire transfers of

2  money as set forth below, knowing that the funds involved in the transportation, transmission,

3  and transfers represented the proceeds of some form of unlawful activity and knowing that such

4  transportation, transmission, and transfers were designed in whole or in part to conceal and

5  disguise the nature, source, ownership and control of the proceeds of specified unlawful activity:

| COUNT | DATE | FINANCIAL TRANSACTION |
|-------|------|----------------------|
| 2 | 7/11/94 | Wire transfer of $1,510,000 from ABS Trading Bank of America account number 0337-6948 in San Francisco, CA, to CARPO-53 account number 5353 at Banque SCS Alliance in Geneva, Switzerland |
| 3 | 8/18/94 | Wire transfer of $968,000 from ABS Trading Bank of America account number 0337-6948 in San Francisco, CA, to CARPO-53 account number 5353 at Banque SCS Alliance in Geneva, Switzerland |
| 4 | 12/12/94 | Wire transfer of $1,963,000 from ABS Trading Bank of America account number 0337-6948 in San Francisco, CA, to CARPO-53 account number 5353 at Banque SCS Alliance in Geneva, Switzerland |
| 5 | 1/4/95 | Wire transfer of $2,210,000 from ABS Trading Bank of America account 0337-6948 in San Francisco, CA to NIHPRO account number 21678 at Banque Populaire Suisse in Geneva, Switzerland |

17      All in violation of Title 18, United States Code, Sections 1956(a)(2) and 2.

18

19  **COUNTS SIX THROUGH EIGHT: (18 U.S.C. § 1956(a)(1)(B) – Money Laundering)**

20      20.    Paragraphs One through Ten and Thirteen through Seventeen of this Superseding

21  Indictment are hereby incorporated by reference.

22      21.    On or about the specific dates set forth below, in the Northern District of California

23  and elsewhere, the defendant

24                          PAVEL IVANOVICH LAZARENKO,
                            a/k/a "Pavlo Ivanovych Lazarenko,"
25

26  did knowingly conduct and attempt to conduct financial transactions affecting interstate and

   foreign commerce, that is, the financial transactions set forth below, which transactions involved
27
   the proceeds of a specified unlawful activity, to wit:  receipt and transfer of property that was
28
   stolen, unlawfully converted, and taken by fraud in violation of 18 U.S.C. § 2314 and § 2315;

SUPERSEDING INDICTMENT              10

1  extortion as specified in 18 U.S.C. § 1956(c)(7)(B)(ii); and wire fraud in violation of 18 U.S.C. §

2  1343, knowing that the transactions were designed in whole or in part to conceal and disguise the

3  nature, source, ownership and control of the proceeds of the specified unlawful activity, and

4  knowing that the property involved in the financial transaction as set forth below represented the

5  proceeds of some form of unlawful activity:

| COUNT | DATE | FINANCIAL TRANSACTION |
|-------|------|----------------------|
| 6 | 11/21/97 | Wire transfer of $6,000,000 from European Federal Credit bank account number 1752902 at Commercial Bank of San Francisco to European Federal Credit Bank account number H10-6694904 at Hambrecht & Quist |
| 7 | 8/31/98 | Cashier's check for $6,745,000 drawn on Dugsbery, Inc.'s WestAmerica Bank account number 0506368505, deposited into First American Title Co. escrow account for the purchase of a residence located at 100 Obertz Lane, Novato, California |
| 8 | 9/9 /98 | A transfer of $2,300,000 from the Dugsbery, Inc. WestAmerica bank account number 0506368505 to Dugsbery, Inc. account number 34-567156 at Bank Boston Robertson Stephens |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B) and 2.

**COUNTS NINE THROUGH THIRTY-~~THREE~~ ONE:**          **(18 U.S.C. § 2314 --
                                              Transportation of Stolen Property)**

22.    The allegations in Paragraphs One through Ten and Thirteen through Seventeen of

this Superseding Indictment are hereby incorporated by reference.

23.    On or about the dates set forth below, in the Northern District of California and

elsewhere, the defendant

PAVEL IVANOVICH LAZARENKO,
a/k/a "Pavlo Ivanovych Lazarenko,"

did cause to be transported, transmitted, and transfered in interstate and foreign commerce,

money of the value of $5,000 or more, in the approximate amounts set forth below, knowing the

money to have been stolen, converted, and taken by fraud:

| COUNT | DATE | ITEM TRANSFERRED |
|-------|------|-----------------|
| 9 | 7/1/94 | Wire transfer of $1,800,000 from LIP Handel |

SUPERSEDING INDICTMENT                    11

| | | | |
|---|---|---|---|
| 1<br>2 | | | account number 502.607.60L at Union Bank of Switzerland in Geneva, Switzerland to ABS Trading account number 0337-6948 at Bank of America |
| 3<br>4<br>5<br>6 | 10 | 5/26/97 | Wire transfer of $2,998,000 from First Trading Bank's correspondent account number 500802948 at Commercial Joint Stock Bank Slaviansky to European Federal Credit Bank correspondent account number 645039 at Pacific Bank for credit to European Federal Credit Bank account number 151897 |
| 7<br>8<br>9<br>10 | 11 | 5/28/97 | Wire transfer of $1,662,000 from First Trading Bank's correspondent account number 500802948 at Commercial Joint Stock Bank Slaviansky to European Federal Credit Bank correspondent account number 645039 at Pacific Bank for credit to European Federal Credit Bank account number 151897 |
| 11<br>12<br>13<br>14 | 12 | 5/29/97 | Wire transfer of $394,000 from First Trading Bank's correspondent account number 500802948 at Commercial Joint Stock Bank Slaviansky to European Federal Credit Bank correspondent account number 645039 at Pacific Bank for credit to European Federal Credit Bank account number 151897 |
| 15<br>16<br>17<br>18 | 13 | 6/3/97 | Wire transfer of $1,530,000 from First Trading Bank's correspondent account number 500802948 at Commercial Joint Stock Bank Slaviansky to European Federal Credit Bank correspondent account number 645039 at Pacific Bank for credit to European Federal Credit Bank account number 151897 |
| 19<br>20<br>21<br>22 | 14 | 6/2/97 | Wire transfer of $2,200,000 from First Trading Bank's correspondent account number 500802948 at Commercial Joint Stock Bank Slaviansky to European Federal Credit Bank correspondent account number 645039 at Pacific Bank for credit to European Federal Credit Bank account number 151897 |
| 23<br>24<br>25<br>26 | 15 | 6/4/97 | Wire transfer of $500,000 from First Trading Bank's correspondent account number 500802948 at Commercial Joint Stock Bank Slaviansky to European Federal Credit Bank correspondent account number 645039 at Pacific Bank for credit to European Federal Credit Bank account number 151897 |
| 27<br>28 | 16 | 6/5/97 | Wire transfer of $170,000 from First Trading Bank's correspondent account number 500802948 at Commercial Joint Stock Bank Slaviansky to European Federal Credit Bank correspondent |

SUPERSEDING INDICTMENT                12

| | | | |
|---|---|---|---|
| 1 | | | account number 645039 at Pacific Bank for credit to European Federal Credit Bank account number 151897 |
| 2 | | | |
| 3 | 17 | 6/6/97 | Wire transfer of $1,000,000 from First Trading Bank's correspondent account number 500802948 at Commercial Joint Stock Bank Slaviansky to European Federal Credit Bank correspondent account number 645039 at Pacific Bank for credit to European Federal Credit Bank account number 151897 |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | 18 | 6/9/97 | Wire transfer of $510,000 from First Trading Bank's correspondent account number 500802948 at Commercial Joint Stock Bank Slaviansky to European Federal Credit Bank correspondent account number 645039 at Pacific Bank for credit to European Federal Credit Bank account number 151897 |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | 19 | 6/10/97 | Wire transfer of $2,000,000 from First Trading Bank's correspondent account number 500802948 at Commercial Joint Stock Bank Slaviansky to European Federal Credit Bank correspondent account number 645039 at Pacific Bank for credit to European Federal Credit Bank account number 151897 |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | 20 | 6/11/97 | Wire transfer of $1,036,000 from First Trading Bank's correspondent account number 500802948 at Commercial Joint Stock Bank Slaviansky to European Federal Credit Bank correspondent account number 645039 at Pacific Bank for credit to European Federal Credit Bank account number 151897 |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | 21 | 6/23/97 | Wire transfer of $1,400,000 from ORPHIN American Bank in Poland account number 61310 to European Federal Credit Bank correspondent account number 645039 at Pacific Bank for credit to European Federal Credit Bank account number 151897 |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | 22 | 7/7/97 | Wire transfer of $4,500,000 from ORPHIN American Bank in Poland account number 61310 to European Federal Credit Bank correspondent account number 1752902 at Commercial Bank for credit to European Federal Credit Bank account number 151897 |
| 24 | | | |
| 25 | | | |
| 26 | 23 | 7/11/97 | Wire transfer of $3,050,000 from ORPHIN American Bank in Poland account number 61310 to European Federal Credit Bank correspondent account number 645039 at Pacific Bank for credit to European Federal Credit Bank account number 151897 |
| 27 | | | |
| 28 | | | |

SUPERSEDING INDICTMENT                    13

| | | | |
|---|---|---|---|
| 24 | 7/11/97 | | Wire transfer of $2,602,000 from ORPHIN American Bank in Poland account number 61310 to European Federal Credit Bank correspondent account number 1752902 at Commercial Bank for credit to European Federal credit Bank account number 151897 |
| 25 | 7/30/97 | | Wire transfer of $8,200,000 from GHP Corporation account number 5452 at Banque SCS Alliance in Geneva, Switzerland to European Federal Credit Bank account 270-0148 at Merrill Lynch Fenner & Smith |
| 26 | 8/1/97 | | Wire transfer of $14,000,000 from CARPO-53 account number 5353 at Banque SCS Alliance in Geneva, Switzerland to European Federal Credit Bank correspondent account number 645039 at Pacific Bank for credit to European Federal Credit Bank account number 151897 |
| 27 | 8/1/97 | | Wire transfer of $14,000,000 from CARPO-53 account number 5353 at Banque SCS Alliance in Geneva, Switzerland to European Federal Credit Bank correspondent account number 1752902 at Commercial Bank for credit to European Federal Credit Bank account number 151897 |
| 28 | 11/24/97 | | Wire transfer of $24,000,000 from European Federal Credit Bank account number 562927 at Credit Suisse in Geneva, Switzerland to European Federal Credit Bank account number H10-6694904 at Hambrecht & Quist |
| 29 | 7/24/98 | | Wire transfer of $9,000,000 from from Lady Lake account number 20171 at Banque SCS Alliance (Bahamas) to European Federal Credit Bank account number 1752902 at Commercial Bank of San Francisco |
| 30 | 8/5/98 | | Wire transfer of $5,300,000 from Lady Lake account number 20171 at Banque SCS Alliance (Bahamas) to Dugsbery, Inc. account number 506361809 at WestAmerica Bank |
| 31 | 8/11/98 | | Wire transfer of $4,000,000 from European Federal Credit Bank account number 7372101 at Bankas Hermis in Vilius, Lithuania to Dugsbery, Inc. account number 506361809 at WestAmerica Bank |

All in violation of Title 18, United States Code, Sections 2314 and 2.

//

//

//

SUPERSEDING INDICTMENT                  14

1 **FORFEITURE ALLEGATION:** **(18 U.S.C. § 982 -- Criminal forfeiture)**

2     25.    The allegations contained in Counts One through Eight of this Superseding

3 Indictment are hereby realleged and by this reference fully incorporated herein for the purpose of

4 alleging forfeitures pursuant to the provisions of Title 18, United States Code, Section 982(a)(1).

5     26.    As a result of the offenses alleged in Counts One through Eight, Pavel Lazarenko

6 shall forfeit to the United States all property, real and personal, involved in such offense, or any

7 property traceable to such property, including but not limited to, approximately $21,696,000,

8 constituting the laundered proceeds of interstate transportation of stolen property, including, but

9 not limited to the following:

10           a. Real property and improvements located at 100 Obertz Lane, Novato,

11 California, and more particularly described in Attachment 1, hereto; and,

12           b. All funds seized from account number 34-567156 at Bank Boston Robertson

13 Stephens, in the approximate amount of $266,307.20.

14     27.    By virtue of the commission of the felony offense charged in Counts One through

15 Eight of this Indictment by Pavel Lazarenko, any and all interest that Pavel Lazarenko has in the

16 above-described property is vested in the United States and is hereby forfeited to the United

17 States pursuant to Title 18, United States Code, Section 982(a)(1).

18     28.    If any of the property described herein as being subject to forfeiture, as a result of

19 any act or omission of the defendant-

20           a.    cannot be located upon the exercise of due diligence;

21           b.    has been transferred or sold to or deposited with, a third person;

22           c.    has been placed beyond the jurisdiction of the Court;

23           d.    has been substantially diminished in value; or

24           e.    has been commingled with other property which cannot be subdivided

25                 without difficulty;

26 any and all interest Pavel Lazarenko has in other property shall be vested in the United States and

27 forfeited to the United States pursuant to Title 18, United States Code, Section 982(b)(1), up to

28 approximately $21,696,000.

SUPERSEDING INDICTMENT        15

1    All in violation of Title 18, United States Code, Sections 2314, 1956(h), and 1956(a)(2).

2

3    DATED:                                    A TRUE BILL.

4              30 Nov 00

5                                              _____
                                               FOREPERSON
6

7    ROBERT S. MUELLER, III
     United States Attorney

8

9    _____
     DAVID W. SHAPIRO

10   Chief, Criminal Division

11

12   (Approved as to form: _____ )
                            AUSA BOERSCH
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SUPERSEDING INDICTMENT                16